UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CATHERINE I.,                                  :
        Plaintiff,                          :
                                            :
        v.                                  :      C.A. No. 19-394WES
                                            :
ANDREW M. SAUL,                                :
COMMISSIONER OF SOCIAL SECURITY,               :
        Defendant.                          :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      Based on a disability application filed on April 19, 2016, Plaintiff Catherine I. was found

to be disabled from her alleged date onset (October 13, 2015) for most of the period, through

August 30, 2018, based on the limiting impact of sarcoidosis, neuropathy, a left hip tear,

migraines and scoliosis. However, the administrative law judge ("ALJ") relied on the testimony

of a medical expert (pulmonologist Dr. John Pella) to find medical improvement so that, from

August 31, 2018, until the date of the decision (January 23, 2019),[1] the ALJ found that she

retained the residual functional capacity ("RFC")[2] to perform unskilled sedentary work, with

additional limitations. A vocational expert testified that this RFC was sufficient to allow her to

do jobs that exist in the national economy. Plaintiff contends that the ALJ's adverse

determination regarding the period in issue from August 31, 2018, to January 23, 2019, is tainted

by error because he relied on the opinion of the non-examining medical expert, while affording

---

[1] This limited period (from August 31, 2018, to October 23, 2018, the date of the ALJ hearing, and continuing until January 23, 2019, the date of the ALJ's decision), which is the focus of this case, is referred to as the "period in issue."

[2] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

little or no weight to several treating sources, as well as because he improperly discounted Plaintiff's testimony about the severity of her symptoms.  In addition, after the ALJ rendered his decision, Plaintiff submitted three new opinions – two from pulmonologist Dr. Elizabeth Gay and the one from rheumatologist Dr. Jeffrey Sparks – which were material and directly relevant to the period in issue; yet the Appeals Council denied review, finding that the new evidence "does not show a reasonable probability that it would change the outcome of the decision."  Tr. 2.  Plaintiff also challenges this determination.

Now before the Court is Plaintiff's motion for reversal of the decision of the Commissioner of Social Security ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. § 405(g) (the "Act").  Defendant Andrew M. Saul ("Defendant") has filed a counter motion for an order affirming the Commissioner's decision.  The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having reviewed the entirety of the record, both the evidence presented to the ALJ and the opinions presented to the Appeals Council, I find that the ALJ erred in finding that Dr. Pella, the testifying medical expert, "had the opportunity to review the medical evidence of record in its entirety," Tr. 57, in that, for the limited period in issue when Plaintiff was found not to be disabled, the record contains one hundred and fifty-six pages of medical evidence that Dr. Pella did not have an opportunity to review because it was not available until after his testimony.  This medical evidence reflects appointments with two treating pulmonologists, the treating neurologist, the treating rheumatologist and the physical therapists; it includes material that indicates worsening of Plaintiff's condition from what was assessed by Dr. Pella.  Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018) (error

requiring remand for ALJ to rely on medical expert who "reviewed an incomplete record" that did not include documents with indications of worsening). I also find that the Appeals Council's refusal to review the ALJ's decision despite Dr. Gay's two new opinions – based on results from new clinical testing (an invasive CPET test) and resulting in a new diagnosis (dysautonomia) to explain symptoms (excessive fatigue and dyspnea) that Dr. Pella had dismissed as subjective and the ALJ discounted – amounts to a "a serious mistake or egregious error[, which] should result in remand." Harlen David O. v. Berryhill, C.A. No. 18-17WES, 2019 WL 2501884, at *14 (D.R.I. Feb. 13, 2019) (quoting Mills v. Apfel, 244 F.3d 1, 5-7 (1st Cir. 2001)).

Based on these findings, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) be GRANTED to the extent that it seeks remand for rehearing and that Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 15) be DENIED.

## I.    <u>Factual and Procedural Background</u>

Plaintiff was thirty-two when she stopped work in October 2015. She has a high school diploma, attended some college and had worked as a bartender, waitress and customer service representative. She was married and the mother of a two-year-old child when hip pain (diagnosed as a labral tear) and back pain (diagnosed as scoliosis) caused her to take a leave. Plaintiff's primary care physician, Dr. Mechery Davis, referred her to an orthopedist, Dr. Jonathan Schiller, who recommended hip surgery. Tr. 474. However, during a hospital admission in November 2015 for pneumonia, Tr. 700, a chest CT revealed what was diagnosed as stage III sarcoidosis;[3] this diagnosis was confirmed by a lung biopsy performed in February

---

[3] The parties' briefs supplied the Court with internet-based definitions for some of the complex terms that are used in this case. The following relates to sarcoidosis:

> Sarcoidosis is a disease that leads to inflammation, usually in the lungs, skin, or lymph nodes, but that can also involve other areas of the body. Symptoms include cough, shortness of breath, weight loss, night sweats, and fatigue (www.nlm.nih.gov/medlineplus/sarcoidosis html). Sarcoidosis can be difficult to diagnose and ordinar[il]y requires a combination of imaging

2016. Hip surgery was postponed as Plaintiff focused on sarcoidosis, which was treated with steroids and a chemotherapy agent. Plaintiff's symptoms included extreme fatigue, dyspnea, tachycardia, weakness and neuropathy, among others. After treating at Rhode Island Hospital, Plaintiff's treatment shifted to Brigham and Women's Hospital in Boston, where the treating team consisted of a pulmonologist, Dr. Gary Hunninghake, and, later in the period, another pulmonologist, Dr. Elizabeth Gay; a cardiologist, Dr. Garrick Stewart; and a rheumatologist, Dr. Jeffrey Sparks. Migraine headaches and small fiber neuropathy, the latter probably related to sarcoidosis, were followed initially by neurologist Dr. Meryl Goldhaber, and later in the period by a team of neurologists, Dr. Angeliki Vgontzas and Dr. Jennifer Hranilovich of Brigham and Women's Faulkner Hospital.

In April 2016, Plaintiff applied for DIB and, in the spring of 2017, Dr. Davis (her primary care physician) and Dr. Stewart (the cardiologist) submitted RFC opinions with exertional and other limits that precluded all work. Tr. 863-68, 870-75.

Despite this record, the SSA non-examining physicians and psychologists opined that Plaintiff would be capable of light work with postural and environmental limitations. Tr. 138-60. After her claim was denied at the initial and reconsideration phases, it was referred to the ALJ for a hearing that was scheduled for December 2017. In advance of the hearing, Plaintiff submitted additional opinion evidence, including a letter from Dr. Sparks (the rheumatologist),

---

studies, lung biopsy, and clinical findings (https://www.mayoclinic.org/diseases-conditions/sarcoidosis/diagnosis-treatment/drc-20350363). All stages of sarcoidosis can cause serious symptoms and debilitating fatigue. Treatment can cause severe side-effects and other complications. (https://www.stopsarcoidosis.org/stages-of-sarcoidosis).

ECF No. 14 at 3-4 n.4.

Sarcoidosis occurs when a group of immune cells form lumps in an organ. Nat'l Heart, Lung, and Blood Inst. (visited Apr. 1, 2020) https://www.nhlbi.nih.gov/health-topics/sarcoidosis.

ECF No. 15 at 2 n.1.

which concludes that pain, fatigue and weakness prevent Plaintiff from working, Tr. 1016, and a letter from Dr. Davis (the primary care physician), which states that shortness of breath, tachycardia, severe migraines, joint pain and mild depression and anxiety have adversely affected her ability to function so that she cannot work and requires assistance at home and to attend medical appointments, Tr. 1028.

At the hearing held on December 19, 2017, Plaintiff testified about crushing fatigue, shortness of breath, tachycardia, the side effects of the aggressive medications prescribed to treat sarcoidosis, migraines, the untreated hip tear, and ongoing back pain, including that consideration was being given to an even stronger chemotherapy drug to be administered by infusion. Faced by Plaintiff's complex and evolving medical situation, the ALJ continued the hearing so that he could call a medical expert.

A lot happened before the hearing reconvened ten months later, on October 23, 2018. First, with increasing hip pain, Plaintiff returned to Dr. Schiller; despite sarcoidosis that still was requiring aggressive treatment, hip surgery was scheduled and performed in June 2018. After surgery, Plaintiff needed crutches, but by late July 2018 Dr. Schiller noted that she could ambulate without them, with a slightly impaired gait, impaired range of hip motion and strength deficiencies on the left side. Tr. 1913. In late June 2018, Dr. Stewart (the cardiologist) noted a normal ECG but ongoing palpitations, atypical chest pain, dyspnea and reduced exertional capacity. Tr. 1884-85. In July 2018, Dr. Sparks (the rheumatologist) noted that there was "no evidence of inflammatory arthritis," but that he wanted her to "keep her regimen as her [sic] for now," as well as that it remained possible that the team might decide to "treat sarcoidosis more aggressively." Tr. 1929-30. And on August 23, 2018, Dr. Hranilovich (the neurologist) noted that "Patient continues to have high frequency migraine," but that there had been a reduction in

the number (from twenty-eight a month to seven to eight a month) following an increase in migraine medication.  Tr. 1949-51.

This amplified record was examined by an SSA expert physician, pulmonologist Dr. Pella, whom the ALJ called as a medical expert at the reconvened hearing held on October 23, 2018.  At the beginning of the hearing, Plaintiff advised that more testing was coming, in that, in December 2018, she would undergo a "cardiac pulmonary stress test, where they have to put a catheter in my heart."  Tr. 72 ("They're looking for dysautonomia . . . inflammation of the nerves in the autonomic nervous system.").  She testified that this test was scheduled because she was not feeling improvement with shortness of breath, fatigue, dizziness, heart rate and pain despite testing that showed improvement, as well as that migraines had increased since she had begun tapering off the steroid.  Tr. 87-90.  Her testimony established that she believes that her condition has worsened over time.  Tr. 86-88, 90-91.

During his testimony, Dr. Pella summarized the record and stated his opinion that Plaintiff's symptoms from onset through the end of August 2018 equaled Social Security Listing 14.09 (Inflammatory arthritis), both Part A and Part B.[4]  Thereafter, for the period from August

---

[4] Part A of Listing 14.09 requires:

> Persistent inflammation or persistent deformity of:
> > 1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
> > 2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

Part B of Listing 14.09 requires:

> Inflammation or deformity in one or more major peripheral joints with:
> > 1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
> > 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.09(A) & (B).

31 to October 23, 2018, (a matter of just seven weeks), Dr. Pella testified that, with Plaintiff recovering from arthroscopic hip surgery, no further evidence of inflammatory arthritis, only subjective evidence of palpitations, normal lung function tests and an improved CT scan, Plaintiff had recovered enough RFC to be able to perform sedentary work with additional limitations.  Tr. 77-80.  Dr. Pella explained his opinion that Plaintiff was no longer disabled – that what remained were subjective complaints not confirmed by clinical testing, that he did not believe that her medications would support side effects and that it was unclear what level of impairment remained from migraines, which he assumed only " may happen occasionally."  Tr. 79.  Regarding the new test Plaintiff had testified was scheduled to be done in December 2018, Dr. Pella cabined his opinion as not including such "additional studies," testifying, "I, obviously, don't know what the basis for those additional studies are, given her past workup."  Tr. 74.  He emphasized that his assessment of the symptoms such as extreme fatigue, dyspnea and palpitations "was during a period I've given. . . . I mean, it's an ongoing record and an evolving record."  Tr. 83.  Based on everything he reviewed, he opined, "she had myriad symptoms, but little, at least at this time, little objective evidence for impairment . . . .  So, most of the symptoms left are primarily subjective in nature, as opposed to the earlier part of the record."  Tr. 76, 80 (emphasis supplied).

After the hearing, Plaintiff submitted Exhibits 60F and 61F, comprising one hundred and fifty-six pages of treating records that Dr. Pella did not see and did not consider in forming his opinion.

A substantial portion of these new materials are physical therapy ("PT") records reflecting intensive treatment from June to October 2018, not only to facilitate recovery from hip surgery, but also to address migraine-related pain and stiffness and the effects of sarcoidosis.  Tr.

1957-2059.  Plaintiff argues that these records are inconsistent with Dr. Pella's testimony that

Plaintiff was able to ambulate by the end of July, albeit with limitations, in that they state as

"goals" functional capabilities that are more limited (e.g., "ambulate without limp independently

without assistive device," "walk through grocery store").  However, it is not clear whether the

stated PT goals reflect functional limitations applicable to the period after August 30, 2018.  The

PT records do not indicate to what extent these goals, which had been formulated in the pre-

August 30 period, had been achieved by that date.

The remainder of the new records are from the treating team at Brigham and Women's

Hospital.  First, on August 30, 2018, Dr. Hunninghake (the pulmonologist) noted:

> Sarcoidosis with substantial improvement in Chest CT findings since prior
> imaging.  With stable to improving PFTs [pulmonary functioning tests]. . . . Will
> need to follow PFTs (and poss chest CT) in follow-up.  This however does not
> appear to explain her continued respiratory symptoms (with a normal chest CT
> and PFTs).  Will refer to dyspnea center for card/pulm exercise testing (it is
> possible tapering her steroids will help as well).

Tr. 2068.  Based on his concern about "continued respiratory symptoms," id., Dr. Hunninghake

referred Plaintiff to another pulmonologist, Dr. Elizabeth Gay, who saw her on October 9, 2018,

Tr. 2076.  Second, the new records include Dr. Gay's treating notes, which indicate that she

reviewed the most recent CT scan, the current pulse of 107 and performed an examination; her

notes state: "history of pulmonary sarcoid . . . referred for dyspnea which has been getting worse

despite good improvement in pulmonary parenchymal disease."  Tr. 2079.  To address these

concerns, Dr. Gay ordered the "Level 3 CPET to evaluate for dysautonomia."  Id.  Third, on

November 9, 2018, Plaintiff returned to the neurologist, Dr. Vgontzas, reporting that, as she

began to taper off sarcoid medications, the migraines "worsened" to the point where they were

"debilitating for the first two months" after tapering began, before becoming "somewhat stable

last month" when a new medication was added.  Tr. 2107-08.  Based on these worsening

symptoms, Dr. Vgontzas recorded her recommendation that a new MRI would be required if these symptoms continued.  Tr. 2108-09.  And last, on November 14, 2018, Plaintiff saw Dr. Sparks, the rheumatologist; he noted that she was nearly recuperated from hip surgery and that a cardiopulmonary stress test had been ordered (by Dr. Gay), with "[w]orsening shortness of breath and dizziness but stable," "[m]igraines on and off, mostly better," and pain in feet and arms but "better controlled."  Tr. 2096.  For sarcoidosis, as of this appointment in November 2018, Plaintiff was still weaning off the steroid and still taking the chemotherapy agent.

In his decision, the ALJ adverted to Dr. Spark's treating record, focusing on his notation of "no evidence of inflammatory arthritis" in November 2018, which is a carry-over from a note to the same effect in July 2018.  Tr. 49, 56 (discussing Tr. 1922-30, 2095-96).  From Dr. Vgontzas' most recent records, he cherry-picked the observations of normal gait and station and "seven to eight moderate headaches and one severe headache a month," Tr. 49-50, 56, but ignored the observation that Plaintiff's migraines became "debilitating" during the period on which Dr. Pella focused, as a result of the tapering of the steroid medication, and had only recently become "somewhat stable," as well as Dr. Vgontzas' notation that, if these symptoms continued, a new MRI would be ordered.  Tr. 2107-09.  Finally, the ALJ concluded that the new treating records from the pulmonologists (Drs. Hunninghake and Gay) show "[a]t most," "subjective complaints of limited exertional ability."  Tr. 55.  He ignored that Dr. Gay performed an examination and found the worsening symptoms so troubling that she ordered an invasive CPET to be conducted.  Tr. 2076-79.  Despite his awareness of these new treating records that Dr. Pella did not see, the ALJ nevertheless relied on the plainly wrong finding that, "[Dr. Pella] had the opportunity to review the medical evidence of record in its entirety."[5]  Tr. 57.  And the

---

[5] Notably, the ALJ made the same finding for the period from onset until August 30, 2018.  Tr. 52.  For that period, the statement is largely true, in that, except for some physical therapy reports, Dr. Pella saw every treating and

ALJ's decision – that Plaintiff was disabled until August 30, 2018, but not after – is based on the Pella testimony.

After the ALJ's decision issued on January 23, 2019, Plaintiff requested review of the adverse portion by the Appeals Council. In support of this request, she submitted three newly signed opinions relating to the period in issue.

Two of the new opinions are signed by Dr. Gay. Although Dr. Gay had not seen Plaintiff since the appointment of October 9, 2018,[6] her opinions (signed on March 5 and 15, 2019) indicate that the Level 3 CPET test results, supported by clinical findings as shortness of breath, fatigue, palpitations and dizziness, confirmed the diagnosis of dysautonomia, as well as that the CPET results, coupled with the earlier CT scan, confirmed the ongoing diagnoses of sarcoid and dyspnea. Tr. 8-20. Based on these test results, clinical observations and diagnoses, for functional limitations, Dr. Gay opined that Plaintiff could sit for no more than two hours, could stand or walk for less than two hours, would be frequently distracted, would require numerous breaks and would be absent more than three times a month. Id. These limitations preclude all work.

The third new opinion is from the rheumatologist, Dr. Sparks. Signed on March 5, 2019, it is Dr. Sparks' second opinion. The opinion reflects the diagnosis of "systemic sarcoidosis," Tr. 22, as well as significant pain and limitations on movement and exertional capacity. Tr. 22-28. It does not elucidate how these limitations mesh with Dr. Sparks' last treating note, which

---

opinion record pertinent to the period during which he opined that Plaintiff's symptoms were so severe as to equal Listing 14.09.

[6] Dr. Gay is a treating source in that her contact with Plaintiff is for the purpose of ongoing medical treatment, and not just to provide an opinion based on an examination. The short length of Dr. Gay's treating relationship with Plaintiff is a factor to be considered in evaluating her opinion. See 20 C.F.R § 404.1527(c). I do not endorse the Commissioner's argument that, because the treating relationship had just begun, Dr. Gay is not a treating physician.

states that there is "no evidence of inflammatory arthritis," that she was "[d]oing better" with sarcoidosis and that hip pain and sinusitis were "improved."  Tr. 2100.

The Appeals Council rejected all three opinions.  It found that they "do[] not show a reasonable probability that [they] would change the outcome of the decision."  Tr. 2.

## II.    <u>Standard of Review</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981); <u>Brown v. Apfel</u>, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987); <u>see also</u> <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Lizotte v. Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  <u>Brown</u>, 71 F. Supp. 2d at 30; <u>see also</u> <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  <u>Brown</u>, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  <u>Id.</u> at 30-31 (citing <u>Colon v. Sec'y of Health & Human Servs.</u>, 877 F.2d 148,

153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

The Court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id. at 9.  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman v. Barnhart, 274 F.3d 606, 610 (1st Cir. 2001).  A remand required because of new evidence submitted to the Appeals Council is under sentence four.  Orben v. Barnhart, 208 F. Supp. 2d 107, 115 (D.N.H. 2002).

### III. <u>Disability Determination</u>

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

### B.    Opinion Evidence

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where

ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).  If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c).  As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).  The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. § 404.1527(c)(2).  However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

### C.      Evaluation of Subjective Symptoms

When an ALJ decides to discount a claimant's subjective statements about the intensity, persistence and severity of symptoms, he must articulate specific and adequate reasons for doing

so or the record must be obvious.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24,

26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a

clearly articulated finding supported by substantial evidence.  See Frustaglia, 829 F.2d at 195.  If

proof of disability is based on subjective evidence so that the credibility determination is

determinative, "the ALJ must either explicitly discredit such testimony or the implication must

be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562

(11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).  Guidance

in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects

of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25,

2017).  It directs the ALJ to consider the entire case record, including the objective medical

evidence; an individual's statements about the intensity, persistence, and limiting effects of

symptoms; statements and other information provided by medical sources and other persons; any

other relevant evidence; and whether statements about the intensity, persistence, and limiting

effects of symptoms are consistent with the medical signs and laboratory findings.  SSR 16-3p,

2017 WL 4790249, at *49465.

**IV.    Analysis**

The landscape for this claim shifted midway through the October 23, 2018, hearing when

Dr. Pella announced his opinion.  In that moment, Plaintiff's need to sustain her burden of

demonstrating her disability for most of the period in issue was eliminated; instead, she was

suddenly focused on the brief period – seven weeks – leading up to the hearing.  Prior the

hearing, Plaintiff had submitted opinions from many of her treating sources (two from her

primary care physician, one from her cardiologist and one from her rheumatologist); but none of

these were based on clinical observations made during what became the period in issue based on

Dr. Pella's testimony.  Further, in light of the proximity of the hearing to the date when Dr. Pella opined that disability ended, treating notes generated during that brief period (from August 30, 2018, until the hearing on October 23, 2018) were not made part of the record until after Dr. Pella testified.

These matters of timing are the seeds from which this appeal has germinated.  Plaintiff alleges error both by the ALJ and by the Appeals Council.

### A.      Alleged Errors by ALJ

Facing a complex and rapidly evolving medical situation, the ALJ appropriately summoned a medical expert but nevertheless stumbled because reliance on Dr. Pella's opinion for the period beginning August 31, 2018, clashes with the well-settled proposition that a medical expert's testimony is not substantial evidence if he was not "privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded [his] opinions."[7]  Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020), adopted, C.A. No. 1:19-CV-00119-MSM-PAS, 2020 WL 555186 (D.R.I. Feb. 4, 2020) (quoting Virgen C., 2018

---

[7] I comment briefly on the reality that this error is not the thrust of Plaintiff's critique of the ALJ's decision; rather, Plaintiff's principal attack challenges the ALJ's puzzling across-the-board rejection of the 2017 treating opinions from Dr. Davis, Dr. Stewart and Dr. Sparks as applicable both during the period of disability, Tr. 51-52, and during the period in issue after August 30, 2018, Tr. 57.  The problem is that, for the period of disability to which these opinions pertain, they are not just consistent with the respective physicians' own treating notes and the treating record from the period to which they pertain, but are also consistent with the Pella opinion, which the ALJ accepted and adopted.  Therefore, the ALJ's assessment of them for the period of disability is unambiguously tainted by error, albeit error that is harmless in that the Pella opinion was accepted.  As to the period in issue, these opinions all were signed in 2017; none is based on treatment of Plaintiff during the period in issue.  Therefore, while the ALJ's stated reason for rejecting them in the latter period does not make sense, 2017 opinions nevertheless should get no weight as assessments of Plaintiff's condition in the last four months of 2018.  Plaintiff's argument is focused on these opinions; it does not advance her cause because the ALJ's errors are harmless.  My focus is not on these harmless errors, but rather on the error discussed in the text, which is missing from Plaintiff's briefs.  This approach is based on my conclusion that justice requires the Court to examine this error, particularly in light of the timing bind in which Plaintiff found herself as a result of Dr. Pella's unexpected testimony.  See Silva v. Colvin, No. CA 14-301 S, 2015 WL 5023096, at *13 (D.R.I. Aug. 24, 2015) ("Court may, and should, raise issues sua sponte when the review of the record suggests that justice requires it"); Choquette v. Astrue, No. C.A. 08-384A, 2009 WL 2843334, at *10 n.2 (D.R.I. Aug. 31, 2009) (when court encounters error plaintiff did not raise, it is compelled to raise it sua sponte).  To avoid unfairness to the Commissioner, a special hearing was held on May 13, 2020, at which I advised the parties of my approach.  See Banks v. Shalala, 43 F.3d 11, 12, 14 (1st Cir. 1994) (district court's sua sponte affirmance of denial of claim without giving notice to parties is error requiring remand).

WL 4693954, at *2-3) (first and second alterations in original); see Sandra C. v. Saul, C.A. No. 18-375JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019), adopted by Text Order of Sept. 16, 2019 ("Remand is necessary to allow for an error-free evaluation of the complete record.").  As Virgen C. makes clear, an ALJ cannot rely on a medical expert's opinion if the expert did not see documents indicating that the claimant's condition is different (that is, potentially worse) from what the expert found based on what he did see.  2018 WL 4693954, at *3 ("[I]f a state-agency physician reviews only a partial record, her 'opinion cannot provide substantial evidence to support [an] ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations.'") (citing Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018)) (second alteration in original).

In this case, Dr. Pella did not see Dr. Hunninghake's August 30, 2018, treating note that reflects improvement in the CT scan and PFTs, yet also indicates that Dr. Hunninghake was so concerned by "continued respiratory symptoms," Tr. 2068, that he referred Plaintiff to Dr. Gay. Dr. Pella also did not see anything reflecting Dr. Gay's initiation of treatment, particularly her notation that "dyspnea . . . has been getting worse," resulting in her decision to send Plaintiff for an invasive test (Level 3 CPET), Tr. 2079.  Dr. Pella also did not see Dr. Vgontzas' notation that, as Plaintiff began to taper off sarcoid medications, her migraines "worsened" to the point where they were "debilitating for the first two months," Tr. 2107, after tapering began and that, despite becoming somewhat stable with increased medication, an MRI might be necessary if these symptoms continued.[8]  Therefore, the Pella opinion standing alone does not amount to

---

[8] Dr. Pella also did not see Dr. Sparks' note from November 14, 2018.  Tr. 2095.  However, this note is largely consistent with Dr. Sparks' treating note from July 11, 2018, Tr. 1923, which Dr. Pella did see and incorporated into his opinion.  The only arguable "worsening" reflected in the November note is that, after four more months, Plaintiff was still being weaned off the steroid and was still being treated with a chemotherapy medication.  Moreover, the ALJ did consider this new record and noted its consistency with the July record.  Tr. 56.  If Dr. Sparks' November 2018 record were the only post-file review material that Dr. Pella did not see, it is far from clear that remand would

substantial evidence; yet it is the sole foundation for the ALJ's RFC, in reliance on the plainly erroneous finding that "[Dr. Pella] had the opportunity to review the medical evidence of record in its entirety."  Tr. 57.

Each of these unseen records indicate a condition that is worse than what Dr. Pella testified was the foundation for his opinion that Plaintiff had recovered the ability to work, albeit still on the cusp of disability.  Each relates to symptoms and clinical procedures that Dr. Pella's testimony expressly makes clear he did not consider in forming his opinion.  E.g., Tr. 74 (opinion disregards "additional studies" – "I, obviously, don't know what the basis for those additional studies are, given her past workup."); Tr. 79. (opinion based on assumption that migraines "may happen occasionally"); Tr. 80, 83 (opinion regarding fatigue, dyspnea and palpitations is based on conclusion that "symptoms left are primarily subjective in nature," and pertinent only to "period I've given. . . . I mean, it's an ongoing record and an evolving record."). And the indication of worsening in each of these records was ignored by the ALJ; rather, he relied on his lay assessment, cherry-picked to focus only on the positive, to find them consistent with the Pella-based RFC.  See Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655 (D.R.I. Nov. 22, 2019), adopted by Text Order of Dec. 13, 2019 (no remand despite post-file review evidence because ALJ carefully reviewed and considered new evidence, which was amenable to lay judgment that it contained no indication of worsening); Jessica M. v. Berryhill, C.A. No. 17-464JJM, 2018 WL 6731549, at *5 (D.R.I. Nov. 7, 2018), adopted by Text Order of Nov. 23, 2018 (ALJ may rely on lay judgment in crafting RFC only if medical findings establish little in the way of impairments; otherwise, medical opinion is required).

---

be necessary.  See Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655 (D.R.I. Nov. 22, 2019), adopted by Text Order of Dec. 13, 2019.

When, as here, there are indications of worsening requiring medical interpretation, the adjudicator's failure to procure further assistance from an expert requires remand for appropriate consideration of it.  Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam); see Ruben M., 2020 WL 39037, at *10 ("ALJ's reliance on the state-agency physician opinion is error because of the post-file-review treating records . . . evidencing a worsening of Plaintiff's spinal impairment that the state-agency physician did not consider"); Sandra C., 2019 WL 4127363, at *6 ("It is well settled that remand is required when an ALJ relies on an RFC . . . opined to by an SSA non-examining source who lacked access to records reflecting a material worsening of symptoms.") (citing Mary K v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018) ("[c]ourt does not know whether the non-examining state agency physicians would have rendered the same Step 2 opinions if they had all of the medical evidence")).  Based on the foregoing, and mindful of the medical complexity of Plaintiff's impairments, as well as the extreme limitations found by Dr. Pella for the period in issue without access to these new and complex treating records (including those from another well-qualified pulmonologist), I recommend remand pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of this treating evidence.  See Sandra C., 2019 WL 4127363, at *6 ("remand is required when an ALJ relies on an RFC on cusp of disability" opined to by SSA expert who did not see records indicating "worsening").

As to Plaintiff's secondary challenge – to the ALJ's rejection of her subjective descriptions of the severity of her symptoms during the period in issue (but not during the prior period of disability) – with remand necessary to evaluate properly the post-file review treating evidence with the assistance of a medical expert, mindful of recent guidance from our Circuit, I also recommend that the Court direct that the ALJ reweigh his assessment that Plaintiff's

subjective statements are not "entirely consistent with the medical evidence," Tr. 55, for the period affected by this treatment.  See Sacilowski v. Saul, No. 19-1712, 2020 WL 2508018, at *6-7 (1st Cir. May 15, 2020) (with no evidence to rebut claimant's testimony about symptom severity, it should be taken as true).

### B.     Alleged Error by the Appeals Council

In this case, the ALJ's decision for the limited period in issue was based on a record showing that the sarcoidosis clinical signs, as reflected in PFT tests and CT scan, were improving, yet Plaintiff reported that debilitating symptoms of extreme fatigue and dyspnea were persisting.  In reliance on the evidence before him, the ALJ found that, with no clinical testing to explain these symptoms, all that remained were "subjective complaints of limited exertional ability," Tr. 55, which he concluded were overstated.  He relied on Dr. Pella's RFC, based on Dr. Pella's judgment that "most of the symptoms left are primarily subjective in nature, as opposed to the earlier part of the record."  Tr. 80.

The evidence before the ALJ did not include the two new opinions signed by Dr. Gay on March 5 and 15, 2019, which focus on these symptoms and report the clinical findings resulting from the Level 3 CPET test; based on the new clinical findings, Dr. Gay diagnosed dysautonomia and endorsed the ongoing diagnoses of sarcoid and dyspnea.  According to Dr. Gay, the symptoms that the ALJ discounted because of improvement in the clinical testing available as of the date of the decision – shortness of breath, fatigue, palpitations and dizziness – are consistent with her new clinical test results and cause limitations greater than those in the ALJ's RFC.[9]  Because of the unusual timing caused by Dr. Pella's unexpected opinion that

---

[9] Plaintiff also submitted to the Appeals Council a new opinion from the rheumatologist, Dr. Sparks, signed on March 5, 2019.  Because this opinion clashes with Dr. Sparks' last treating notes from July and November 2018, which were accurately summarized by the ALJ in his decision, Tr. 49, 56-57, I find no error, never mind

Plaintiff recovered the capacity to work just weeks before the ALJ's hearing, these treating source opinions reporting on the CPET tests results did not come into existence until after the ALJ decided the case. Yet the Appeals Council rejected them and declined to review the case, finding that they "do[] not show a reasonable probability that [they] would change the outcome of the decision." Tr. 2.

The Appeals Council must review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). To find Appeals Council error,[10] the Court must consider whether the Appeals Council's stated reason for declining review is a serious mistake or egregious error. Harlen David O., 2019 WL 2501884, at *14 & n.21. In this Circuit, Plaintiff's challenge to the Appeals Council's decision faces the high bar set by Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001), which holds that the Appeals Council's decisions should be afforded "a great deal of latitude" and "great deference." Id. at 5-7; see Cookson v. Colvin, 111 F. Supp. 3d 142, 149 (D.R.I. 2015); Larocque v. Barnhart, 468 F. Supp. 2d 283, 286-87 (D.N.H. 2006). If egregious error taints the Appeals Council's determination that the new evidence does not "show there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision," Tr. 2, remand is required for further consideration by the ALJ, even though he did not make "a mistake" in ignoring evidence that was never presented to him. Mills, 244 F.3d at 5. If

---

"egregious" error, in the Appeals Council's finding that the Sparks opinion "does not show a reasonable probability that it would change the outcome of the decision." Tr. 2.

[10] As a threshold matter, the Appeals Council may reject new evidence unless the claimant demonstrates that "good cause" justified the late submission. 20 C.F.R. § 404.970(b)(3)(iv). Presumably because of the tight timing in this case, particularly because Dr. Gay's opinions did not exist at the time of the ALJ's decision, the Appeals Council did not find that Plaintiff had failed to show good cause. See Solomonson v. Berryhill, 18-CV-5249, 2019 WL 6134168, *2 (E.D.N.Y. Nov. 19, 2019) (evidence that did not exist at time of ALJ's decision is new and there is good cause for claimant's failure to submit earlier). My analysis assumes that good cause was established.

the supplementary evidence is starkly inconsistent with the ALJ's determination, and undermines it, the Appeals Council's denial of review constitutes an egregious mistake.  Orben, 208 F. Supp. 2d at 111.

In this case, the Appeals Council learned what the ALJ (and Dr. Pella) did not know – that Dr. Gay's testing had yielded abnormal clinical results that resulted in a diagnosis explaining the symptoms (dyspnea and fatigue) that Dr. Pella (and therefore the ALJ) had dismissed as entirely subjective.  Therefore, these symptoms, which had befuddled Dr. Hunninghake to the point where he referred Plaintiff to Dr. Gay, are now supported by new clinical findings and a new diagnosis to explain their persistence, undermining the ALJ's decision to discount them as overstated in light of the absence of clinical findings.  In light of how pivotal the discounting of Plaintiff's subjective statements regarding the severity of her symptoms was to the outcome for the period in issue, there can be little question that the Gay opinions are starkly inconsistent with and undermine the ALJ's determination; therefore, the Appeals Council's denial of review constitutes an egregious mistake.  Id.

Pursuant to sentence four of 42 U.S.C. § 405(g), I recommend that the matter be remanded to afford the ALJ the opportunity to revisit his disability determination in light of this compelling evidence provided to the Appeals Council, which the ALJ never had the chance to review.  Id. at 114-15.

**V.    Conclusion**

Based on the foregoing analysis, pursuant to sentence four of 42 U.S.C. § 405(g), I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) be GRANTED to the extent that it seeks remand for rehearing and that Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 15) be DENIED.  Any objection to this report

and recommendation must be specific and must be served and filed with the Clerk of the Court

within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure

to file specific objections in a timely manner constitutes waiver of the right to review by the

district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero,

524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st

Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 26, 2020